# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARCUS JOHN MENDE,

      Petitioner,

                              Case No. 14-13799

v.

                              Hon. Terrence G. Berg

MARY BERGHUIS,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [DKT. 1], DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Marcus John Mende, presently confined at the Central Michigan Correctional Facility in St. Louis, Michigan, has filed a *pro se* habeas corpus petition challenging his state convictions for criminal sexual conduct. He alleges as grounds for relief that (1) the prosecuting attorney committed misconduct during her opening statement and closing arguments, (2) trial counsel was ineffective for advising him to reject a plea offer and for failing to object to the prosecutor's conduct, and (3) appellate counsel was ineffective for failing to raise the claims about the prosecutor and trial counsel on direct appeal. Respondent

Mary Berghuis argues in an answer to the petition filed through counsel that Petitioner procedurally defaulted his first claim (prosecutorial misconduct) and that the state courts' rejection of Petitioner's claims did not result in decisions that were either contrary to or unreasonable applications of federal law, or were unreasonable determinations of the facts. The Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the petition will be denied.

## I. BACKGROUND

The charges against Petitioner arose from allegations that he engaged in sexual penetration and sexual contact with the sixteen-year-old daughter of a friend. Petitioner was tried before a jury in Oakland County Circuit Court where the testimony established that –

> On the night of May 30, 2010, the sixteen-year-old complainant went to the home of John and Rebecca Lyle to babysit their children while they went out for the evening. The Lyles were family friends whom the complainant had known for four to five years. The complainant, who had a restricted driver's license, intended to spend the night at the Lyles's. The Lyles and their friend, defendant in this case, then left to go out. Two or three hours later, the complainant fell asleep on a couch in the living room.
>
> The complainant testified that she woke up briefly when she heard the Lyles and defendant return but she quickly went

2

back to sleep. She woke again and moved to the living room floor to sleep. At this time, defendant was sleeping on a second, smaller couch in the Lyles's living room. The complainant heard defendant move to the bigger couch. He then began to touch her feet. No words were exchanged. The complainant was laying on her stomach and side on the floor with her legs bent and a pillow under her head. She woke up again when she felt defendant lying behind her and grabbing her chest, first grabbing over her clothing and then underneath her t-shirt and bra. The complainant testified that she froze and did not do anything in response because she was scared and could not believe what was happening.

Defendant asked the complainant if she was sleeping. She did not respond. Her blankets had been kicked down to her feet. Defendant got behind the complainant and pulled her sweatpants down to about her knees and tried to put his penis inside her vagina several times. He inserted his fingers in the complainant's vagina. During parts of this incident, defendant pushed the pillow that the complainant's head was on up in front of her face so that she could only see the pillow. Defendant eventually stopped, pulled [the complainant's] pants up, and left the house. Defendant's semen was discovered on the complainant's sweatpants.

At trial, defendant did not dispute that the sexual conduct took place; instead, defense counsel argued that the complainant had consented. Defendant pointed to the fact that he never threatened the complainant or tried to stop her from leaving, nor did the complainant say or do anything during the incident to indicate she did not consent.

*People v. Mende*, No. 305558, 2012 WL 6913773, at *1 (Mich. Ct. App. Nov. 20, 2012).

On July 5, 2011, the jury found Petitioner guilty, as charged, of two counts of criminal sexual conduct in the third degree, MICH. COMP. LAWS § 750.520d(1)(b) (sexual penetration, using force or coercion), and two counts of criminal sexual conduct in the fourth degree, MICH. COMP. LAWS § 750.520e(1)(b) (sexual contact, using force or coercion). On July 29, 2011, the trial court sentenced Petitioner to concurrent terms of seven and a half to fifteen years in prison for the third-degree criminal sexual conduct convictions and one to two years in prison for the fourth-degree criminal sexual conduct convictions.

In an appeal as of right, Petitioner argued through counsel that the trial court denied him a fair trial when the court failed to instruct the jury on his defense of consent. In a *pro se* supplemental brief, Petitioner argued that: (1) the trial court abused its discretion at sentencing and relied on inaccurate information when the court raised the misdemeanor charges of fourth-degree criminal sexual conduct to the status of felonies for purposes of scoring the sentencing guidelines; (2) the prosecutor deprived him of a fair trial and due process of law during her opening statement and closing arguments; (3) trial counsel

deprived him of effective assistance by advising him to reject a plea offer and by failing to object to the prosecutor's misconduct; and (4) appellate counsel was ineffective for failing to raise his supplemental claims in her appellate brief. The Michigan Court of Appeals rejected Petitioner's arguments and affirmed his convictions in an unpublished, *per curiam* opinion. *See Mende*, 2012 WL 6913773.[1] The Court of Appeals also denied Petitioner's motion for reconsideration. *See People v. Mende*, No. 305558 (Mich. Ct. App. Jan. 18, 2013).

Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal because it was not persuaded to review the issues. *See People v. Mende*, 493 Mich. 969; 829 N.W.2d 227 (2013). On September 30, 2013, the Michigan Supreme Court denied reconsideration. *See People v. Mende*, 495 Mich. 868; 843 N.W.2d 125 (2013). Finally, on September 30, 3014, Petitioner filed his *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254.

---

[1] Although the Court of Appeals affirmed Petitioner's convictions, the court remanded the case for correction of the judgment of sentence to reflect the correct statutory citation for fourth-degree criminal sexual conduct. *Mende*, 2012 WL 6913773, at *1, n.1.

## II. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court's
decisions but unreasonably applies that principle to the facts
of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on

his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

### III.  ANALYSIS

#### A.  The Prosecutor

In his first claim, Petitioner alleges that the prosecuting attorney denied him a fair trial and his right to due process when she asked the jury to be advocates for the complainant by being the complainant's voice and by placing themselves in the complainant's shoes.  Petitioner also asserts that the prosecutor argued facts not in evidence during closing arguments.

The Michigan Court of Appeals reviewed Petitioner's claims "for plain error affecting substantial rights" because Petitioner did not contemporaneously object and request a curative instruction when the prosecutor made the disputed remarks.  This failure to comply with a state's procedural rule—such as that requiring a contemporaneous objection—is considered a procedural default, and in such circumstances the Court of Appeals analyzed Petitioner's claims about

the prosecutor under a plain error standard of review.  Here, the state

appellate court found that the prosecutor's statements did not amount

to plain error.

Respondent thus argues that Petitioner's claim is procedurally

defaulted.  A procedural default is "a critical failure to comply with

state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997).  It "is not a

jurisdictional matter," *id*., and to obtain habeas relief on procedurally

defaulted claims, a petitioner "must establish cause and prejudice for

the defaults" and "also show that the claims are meritorious." *Babick v.

Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (internal citation omitted).

Regardless of whether Petitioner can establish cause and

prejudice for failing to object to the prosecutor's remarks, his

prosecutorial-misconduct fails on the merits, as will be explained below.

And because "federal courts are not required to address a procedural-

default issue before deciding against the petitioner on the merits,"

*Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), the Court "cut[s] to

the merits here, since the cause-and-prejudice analysis adds nothing

but complexity to the case." *Babick*, 620 F.3d at 576.

### 1. Remarks During Prosecutor's Opening Statement

Petitioner contends first that the prosecutor deprived him of a fair trial and due process of law when she made the following remarks during her opening statement:

> And I ask when you listen to all the evidence in this case, I'm going to ask you to *be her voice*. *Be her voice* of what she went through that night and to find the defendant guilty of all four counts of criminal sexual conduct, two counts of third and two counts of fourth because that's exactly what he did to her in the early morning hours of May 31st while she was babysitting. Thank you.

(6/30/11 Trial Tr. at 121, ECF No. 6-4, Pg ID 216) (emphases added).

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he standard to be applied to claims of prosecutorial misconduct is whether the conduct was 'so egregious . . . as to render the entire trial fundamentally unfair.' " *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)). "In deciding whether prosecutorial misconduct mandates that

habeas relief be granted, the Court must apply the harmless error standard." *Id.* (citing *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)). An error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The disputed remarks here – to be the complainant's voice – arguably were an appeal to the jurors' emotions. Prosecutors must "refrain from improper methods calculated to produce a wrongful conviction," *Viereck v. United States*, 318 U.S. 236, 248 (1943), and may not incite the passions and prejudices of the jury by appealing to the jurors' emotions, rather than focusing on the facts or issues. *Id*. at 247-48; *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008); *Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2005) (acknowledging "the cardinal rule that a prosecutor cannot make statements 'calculated to incite the passions and prejudices of the jurors' ") (quoting *Gall v. Parker*, 231 F.3d 265, 315 (6th Cir. 2000) (quoting *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991)).

In this case, however, the jurors could have concluded that there was no reason to be the complainant's voice because the complainant testified at trial and explained what she experienced on the night in question. The question for the jurors was not whether they should be the complainant's voice, but whether the complainant was credible and whether the prosecution had proved the element of force or coercion.

Furthermore, the prosecutor's remarks were made at the conclusion of her opening statement, which summarized what she expected the evidence to show and which acknowledged the prosecution's burden of proving that the sexual acts were not consensual. Taken in context, the remarks although improper were not so prejudicial as to deprive Petitioner of a fair trial. *See, e.g., United States ex rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569 (N.D. Ill. 1989) (finding that the prosecutor's reference to the victim "in his grave crying out for [a guilty verdict]" was problematic and improper because it "arguably inflamed the emotions of the jurors," but that, when viewing the record as a whole, the statement did not deprive the defendant of a fair trial).

The trial court, moreover, instructed the jurors before the attorneys made their opening statements that the attorneys' statements were not evidence. (6/30/11 Trial Tr., at 95, ECF No. 6-4, Pg ID 210; *id.* at 113, Pg ID 214). "[J]uries are presumed to follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and there is no reason to believe that they did not follow the trial court's instructions in this case.

In conclusion, the prosecutor's opening remarks did not deprive Petitioner of a fair trial, and any error was harmless, given the trial court's jury instructions, the fact that the remarks were not pervasive, and the fact that the complainant herself testified and gave voice to what occurred on the night in question. Habeas relief is not warranted on Petitioner's claim about the prosecutor's opening statement.

## 2. Remarks During Prosecutor's Closing Arguments

Petitioner's remaining claims about the prosecutor concern her closing arguments. When the issue is the prosecutor's remarks during closing argument, the "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker*

*v. Matthews*, 567 U.S. 37, 45 (2012) (*per curiam*).  In *Darden*, the

Supreme Court stated that

> It "is not enough that the prosecutors' remarks were
> undesirable or even universally condemned." *Darden v.
> Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)].  The
> relevant question is whether the prosecutors' comments "so
> infected the trial with unfairness as to make the resulting
> conviction a denial of due process." *Donnelly v.
> DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431
> (1974).  Moreover, the appropriate standard of review for
> such a claim on writ of habeas corpus is "the narrow one of
> due process, and not the broad exercise of supervisory
> power." *Id.*, at 642, 94 S.Ct., at 1871.

*Darden*, 477 U.S. at 181; *see also Leonard v. Warden, Ohio State

Penitentiary*, 846 F.3d 832, 852 (6th Cir. 2017) (noting that the relevant

question on review of claims of prosecutorial misconduct in closing

arguments is whether the prosecutors' comments infected the trial with

such unfairness as to make the resulting conviction a denial of due

process).  A reviewing court must "analyz[e] disputed comments in the

context of the trial as a whole and recogniz[e] that inappropriate

comments alone do not justify reversal where the proceedings were

'otherwise fair.'"  *United States v. Henry*, 545 F.3d 367, 377 (6th Cir.

2008) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).

### a. Victim-related Remarks

Petitioner objects to the following statements made by the

prosecutor during her closing argument:

> [The complainant] was scared and what did she do?  She
> stood still.  That was her defense mechanism.  No—no one—
> until you're in that situation, *what would you do*?  Well, I
> stood still.  I didn't move.  I pretended like I was still
> sleeping.  I was afraid.
>
>      * * * *
>
> And again, in her defense mechanism she says, I left my
> shoes.  I get in the car.  But we know she's afraid.  We know
> that she's afraid 'cuz *we're in that moment with her* when she
> was telling (indiscernible)—telling you what had gone on in
> that home.
>
>      * * * *
>
> Think about that.  Think about that moment, her having to
> tell her mom what she had gone through.  [The
> complainant's mom] says, I could barely understand her.  I
> got—Mark hurt me.  She was crying hysterically, I didn't
> know how to get her home.  *Imagine that*?

(7/5/11 Closing Arguments and Jury Instructions, at 5-7, ECF No. 6-6,

Pg ID 334-35) (emphases omitted).

Petitioner maintains that asking the jurors to place themselves in

the complainant's shoes was improper.  While it is true that closing

arguments which "encourage juror identification with crime victims are improper," *Johnson*, 525 F.3d at 484, claims of prosecutorial misconduct are reviewed deferentially in habeas cases. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). And in this case, the prosecutor was explaining why the complainant was passive and did not resist Petitioner's advances.

Furthermore, the trial court charged the jurors not to let sympathy or prejudice influence their decision. (7/5/11 Closing Arguments and Jury Instructions, at 42, ECF No. 6-6, Pg ID 343.) The trial court also instructed the jurors that the attorneys' arguments were not evidence and that they should consider only the admissible evidence, which was the witnesses' testimony and the exhibits. (*Id*. at 44-45, Pg ID 344.) These instructions tended to dissipate any prejudice caused by the remarks.

The Court concludes that the prosecutor's remarks were not so flagrant as to deprive Petitioner of due process. Even if constitutional error occurred, the error was harmless, given the trial court's jury instructions.

### b. Petitioner-related Remarks

Petitioner argues that the prosecutor made statements not supported by the evidence when she stated that Petitioner had a sense of entitlement to every woman with whom he came in contact. (*Id.* at 37, Pg ID 342.) Prosecutors may not "bring to the attention of the jury any 'purported facts that are not in evidence and are prejudicial,' " but they may "'argue reasonable inferences from the evidence.'" *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (citations omitted). Here, there was testimony presented at trial that Petitioner had sexual relationships with several women, including with the complainant's mother and the woman whose children the complainant was babysitting on May 30, 2010. (7/5/11 Closing Arguments and Jury Instructions, at 30, ECF No. 6-6, Pg ID 340.) In view of this evidence, it was not an unreasonable inference from the testimony that the Petitioner felt entitled to engage in sexual activity with women. The prosecutor's comment was proper for an additional reason: it made on rebuttal in response to defense counsel's closing remarks that Petitioner "was having all kinds of sex," including sexual relationships with the women

mentioned above.  *Id.*  "The prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments."  *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (quoting *Henry*, 545 F.3d at 377); *see also Angel v. Overberg*, 682 F.2d 605, 607–08 (6th Cir. 1982) (*en banc*) (stating that "[t]he prosecutor is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel") (citing *Donnelly*, 416 U.S. at 637).  The Court therefore finds no error in the prosecutor's comment about Petitioner's alleged sense of entitlement concerning women.

Petitioner also appears to contest the prosecutor's statement that Petitioner fled after the incident with the complainant.  (7/5/11 Closing Arguments and Jury Instructions, at 40-41; ECF No. 606, Pg ID 343.) But this argument was based on the testimony at trial.  Specifically, Rebecca Lyle testified that, when she talked with Petitioner shortly after the incident with the complainant, Petitioner told her that "he was running because he was scared," and that he was scared of "get[ting] in trouble for messing with a little girl."  (7/1/11 Trial Tr., at 220, ECF No.

6-5, Pg ID 325.)  Because the argument was based on the trial testimony, it was proper.

### 3. Conclusion

For the reasons given above, the prosecutor's conduct was either proper or not so egregious as to render Petitioner's trial fundamentally unfair.  And even though Petitioner contends that the cumulative effect of the prosecutor's comments deprived him of a fair trial, this contention is not cognizable on habeas corpus review.  *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).  The Court therefore declines to grant relief on Petitioner's prosecutorial-misconduct claim.

### B.  Trial Counsel

In his second claim, Petitioner asserts that trial counsel was ineffective for advising him to reject a plea offer and for failing to object to the prosecutor's conduct.  The Michigan Court of Appeals adjudicated this claim on the merits and concluded that trial counsel was not ineffective.

The "clearly established Federal law" for Petitioner's claim is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id*. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

The prejudice prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be

substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693). In a habeas case, moreover, review of an ineffective-assistance-of-counsel claim

> is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ––––, ––––, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, supra, at ––––, 134 S.Ct., at 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

## 1. The Alleged Plea Offer

Petitioner alleges that the prosecutor offered him a plea bargain that included a sentence of three years in prison and that he rejected the offer on the advice of trial counsel. He claims that trial counsel's advice was based on the mistaken belief that he would receive no more than three years in prison under the Michigan sentencing guidelines and, thus, there was no benefit to pleading guilty.[2] Petitioner points out

---

[2] The sentencing guidelines actually were scored at 84 to 140 months (7 years to eleven years, eight months), but reduced at sentencing to 78 to 130 months (six and

that he was convicted of all the charges and sentenced to more than two times the sentence contemplated in the plea offer.

The Supreme Court's decision in *Strickland* applies to ineffective-assistance-of-counsel claims where the ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial. *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Id.*

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164.

> Moreover, because the *Strickland* standard, especially as applied in the plea-bargain context, is a general one, the range of reasonable applications permissible under § 2254(d) is substantial. *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Thus, when a federal

---

a half years to ten years, ten months). (7/29/11 Sentencing Tr., at 6, ECF No. 6-8, Pg ID 389.)

> court reviews an ineffective-assistance claim under §
> 2254(d), the question is not simply whether counsel's actions
> were reasonable, but "whether there is any reasonable
> argument that counsel satisfied *Strickland's* deferential
> standard." *Id.*

*McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir.), *cert. denied*, 136 S. Ct.

415, 193 L. Ed. 2d 328 (2015).

The Michigan Court of Appeals considered Petitioner's claim on

direct appeal and rejected it as meritless. The Court of Appeals pointed

out that, other than Petitioner's affidavit, there was no evidence in the

record that he was offered a plea deal or that he rejected it at the advice

of trial counsel.

Petitioner subsequently applied for leave to appeal in the

Michigan Supreme Court. While his case was pending there, he filed a

motion for miscellaneous relief, which included an affidavit from

attorney David J. Kramer. Mr. Kramer states in his affidavit that he

represented Petitioner, but substituted out of the case before trial. He

goes on to say that assistant prosecutor Barbara Morrison made a plea

offer of approximately three years' incarceration if Petitioner pleaded

guilty to a count of criminal sexual conduct.  *See* Affidavit Regarding Plea Offer, ECF No. 6-10, Pg ID 638-39.

The People responded to Petitioner's motion by stating that Barbara Morrison was never assigned to Petitioner's case and that Heather Brown was the prosecuting attorney on the case.  Attached to the People's response to Petitioner's motion was Ms. Brown's affidavit, which states that she was assigned to the case at its inception and that, at no time, did the People make a plea offer.  *See* People's Answer in Opp'n to Deft's Mot. for Miscellaneous Relief, ECF No. 6-10, Pg ID 691-96.

Shortly afterward, the Michigan Supreme Court denied leave to appeal.  Petitioner sought reconsideration and attached a new affidavit from Mr. Kramer, which states that, to the best of his recollection, prosecutor Heather Brown offered Petitioner a two- or three-year prison term in the form of a sentencing agreement.  Mr. Kramer also states that he communicated this information to Petitioner, and shortly thereafter, he withdrew from the case.  *See* Mot. to Reconsider, ECF No. 6-10, Pg ID 698-700.

Noticeably missing from the record and pleadings is an affidavit from Marsha Kosmatka, who represented Petitioner at trial. And due to the conflicting statements in the affidavits signed by Mr. Kramer and Ms. Brown, it is unclear whether Petitioner was actually offered a plea and sentencing agreement of three years in prison in return for his guilty plea. In fact, in a letter that Petitioner sent to his appellate attorney on December 26, 2011, he stated that he was beginning to question whether the prosecution had made a plea offer. *See* Reply Brief in Support of Pet. for Writ of Habeas Corpus, Ex. A. ECF No. 7, Pg ID 718.

Even if there was a plea agreement, Petitioner informed his appellate attorney at one point in time that he would *not* have taken the plea if it were offered to him. *Id*. Although he goes on to say that he would have accepted the plea offer if he had known that his actual guidelines would not be three years, he then states that he had no reason to believe that he would be found guilty because the sexual activity was consensual. *Id*. It is questionable then whether Petitioner

would have accepted the plea offer if it existed, because he apparently did not think he was guilty.

It is also unlikely that the trial court would have agreed to a sentence of three years, because the court declined to sentence Petitioner at the bottom of the guidelines (six and a half years), as calculated at the sentencing. Instead, the court sentenced Petitioner to a minimum of seven and a half years.

Finally, even assuming that the plea offer existed, that Petitioner was inclined to accept it, and that he rejected it on the advice of trial counsel, counsel could have reasonably believed that Petitioner would not be found guilty and that there was no advantage to accepting the plea offer. As the Michigan Court of Appeals pointed out, defense counsel was effective in attempting to show that the complainant's behavior was reasonably interpreted by Petitioner as consent. An attorney's "erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Lafler*, 566 U.S. at 174.

Trial counsel arguably satisfied *Strickland's* deferential standard, and the state court's conclusion – that Petitioner's argument about trial

counsel was meritless – also is entitled to deference. The Court therefore declines to grant relief on this claim.

## 2. The Failure to Object to the Prosecutor's Conduct

Petitioner's remaining claim about trial counsel is that counsel failed to object to the prosecutor's conduct. "[A] failure to object to prosecutorial misconduct can amount to ineffective assistance of counsel." *Hodge v. Hurley*, 426 F.3d 368, 377 (6th Cir. 2005). Nevertheless, as pointed out above, some of the prosecutor's conduct was proper, and the allegedly improper conduct either was not egregious or it was harmless error. Because Petitioner's underlying claims about the prosecutor lack merit, defense counsel was not ineffective for failing to object to the claimed errors. *Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010).

## C. Appellate Counsel

In his third and final claim, Petitioner alleges that his appellate attorney was ineffective for failing to raise his first and second habeas claims in the appeal as of right. The Michigan Court of Appeals disagreed with Petitioner because, in its opinion, Petitioner's

underlying arguments lacked merit and Petitioner suffered no prejudice from appellate counsel's failure to raise the issues on appeal.

Claims of ineffective assistance of appellate counsel are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010). To prevail on his claims, Petitioner "must show that his [appellate] counsel's performance was deficient and that he was prejudiced as a result." *Id.* (citing *Strickland*, 466 U.S. at 687). He must demonstrate (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability that he would have prevailed on appeal if his attorney had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694).

Here, appellate counsel made the determination that there were no meritorious appellate issues other than the one she presented to the Michigan Court of Appeals. *See* appellate counsel's letter to Petitioner on May 15, 2012, ECF No. 609, Pg ID 518. Further, the claims that appellate counsel failed to raise on appeal lack merit for the reasons

given above. Even if appellate counsel was remiss in not raising the claims, Petitioner was able to present the issues in a *pro se* supplemental brief, which the Court of Appeals considered, but nevertheless rejected on the merits. As a result, Petitioner was not prejudiced by appellate counsel's performance, and habeas relief is not warranted on Petitioner's claim.

## IV. CONCLUSION

Petitioner may not appeal this Court's opinion and order without first acquiring a certificate of appealability, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. The Court therefore declines to issue a certificate of appealability. The Court nevertheless will allow Petitioner to proceed *in forma pauperis* on appeal, because an appeal from this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: September 11, 2017

**Certificate of Service**

I hereby certify that this Order was electronically submitted on September 11, 2017, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager